IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

No. 24-6979

MICHAEL FIRESTONE, *et al*.,

*Plaintiffs-Appellants*,

v.

SCOTT BESSENT, *et al*.

*Defendants-Appellees*.

On Appeal from the United States District Court
for the District of Oregon
No. 3:24-cv-01034-SI
Hon. Michael H. Simon

**RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTION TO HOLD PROCEEDINGS IN ABEYANCE**

Plaintiffs request that this Court deny the government's motion to hold the proceedings "in abeyance pending the Financial Crimes Enforcement Network's Final Rule regarding the Corporate Transparency Act's reporting requirements"—a *proposed* rule whose details have not yet been determined and which the government only speculates it "intends to issue … this year." Gov. Mot. at 1-2. While using the term "abeyance," the government is, in reality, seeking an indefinite stay of this appeal, with the explicit goal of strategically mooting Plaintiffs' challenge to a statute. Not only does the government fail to mention the relevant burden of establishing entitlement to a stay (much less make an attempt to satisfy this lofty

obligation) its transparently improper purpose in seeking the stay confirms that the motion should be denied.

**I. The Government Must Satisfy a Demanding Burden to Show Entitlement to a Stay.**

The only authority provided by the government for its curious request is Justice Brandeis's observation from nearly a century ago that federal courts should act with restraint in passing on constitutional challenges. *See* Gov. Mot. at 2. That truism doesn't change the "virtually unflagging obligation of the federal courts to *exercise the jurisdiction given them.*" *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (emphasis added). As the government has acknowledged, this case is not moot, and this Court currently and undoubtedly has jurisdiction over this matter. It is thus obligated to decide this case.

This Court, of course, may control its docket, but even narrow and short-term requests for stays of litigation must be evaluated carefully. Courts must consider three factors when they determine whether to temporarily stay proceedings: (1) The possible damage from granting a stay, (2) "'the hardship or inequity which a party may suffer in being required to go forward,'" and (3) "'the orderly court of justice measured in terms of simplifying or complication of issues, proof, and questions of law.'" *See Chinaryan v. City of Los Angeles*, 122 F.4th 823, 824 (9th Cir. 2024) (stay of mandate). These factors are non-exclusive, as courts possess "inherent authority

to stay federal proceedings pursuant to" their "docket management powers." *Id.* (internal quotation marks omitted).

## II. The Government Comes Nowhere Close to Justifying Its Request.

The government never acknowledges its burden and fails entirely to meet it. This silence is particularly telling as a stay would not only inflict serious irreparable harm on Plaintiffs, but it would strategically allow the government to evade review of important constitutional questions that are plainly within this Court's jurisdiction. This Court should not bless such litigation tactics.

### 1. Plaintiffs face irreparable harm necessitating this Court's timely review.

Plaintiffs face irreparable harm as the Interim Final Rule (IFR) merely delays, rather than eliminates, domestic enforcement of the CTA. The government offers *no* guarantee that it will not enforce the CTA against them after January 1, 2026. And FinCEN is *actively* soliciting comments concerning the propriety of domestic reporting exemptions, 90 Fed. Reg. at 13693. This signals that the government may nevertheless enforce the CTA against Plaintiffs, despite its representations today. Indeed, the reason the government concedes that the case is not presently moot is because it cannot—and will not—guarantee that Plaintiffs will never be subject to the CTA. Plaintiffs therefore have no choice but to assume they remain subject to the CTA post-delay and face irreparable harm on January 1, 2026, when the IFR expires. *See id*.

Regardless of the government's eventual course of action, Plaintiffs First Amendment rights are also *presently* injured by the CTA, and delay exacerbates that injury.[1] *See NAACP v. Button,* 371 U.S. 415, 433 (1963) (First Amendment "freedoms are delicate and vulnerable ... The threat of sanctions may deter their exercise almost as potently as the actual application of sanctions"); *see also Ams. For Prosperity Found. v. Bonta*, 594 U.S. 595, 615-16 (2021) (observing that disclosure requirements can chill association). The threat of the government's eventual enforcement of the CTA's invasive reporting requirements presently looms over Plaintiffs. This unconstitutionally chills their associational rights. *See Button*, 371 U.S. at 433.

### 2. This Court's proceeding without delay causes the government no injury.

On the other hand, the government identifies no reason it would be harmed if this case proceeds without delay. The government's argument (at 2) appears to be that it would prefer to see whether this case *might* be mooted by its own actions at some undetermined time in the future. But the government's mere preference merits little weight. And this Court need not delay review based on the government's inability to choose a firm course of action. This Court's "virtually unflagging obligation" to exercise its jurisdiction and promptly resolve the cases before it surely

---

[1] Plaintiffs have consistently argued throughout this litigation that the CTA causes First Amendment injury, as it chills their right to associational privacy.

outweighs the government's preference of avoiding scrutiny. *See Colo. River Water Conservation Dist.*, 424 U.S. at 817. Uncertainty concerning the government's future enforcement position is frequently present in litigation. That uncertainty does not constitute a reason to delay a case's review, even where a case may eventually become moot. *See Super Tire Eng'g Co. v. McCorkle*, 416 U.S.115, 122 (1974). The possibility of *eventual* mootness is simply an insufficient reason to delay review, especially when future events are uncertain. *See, e.g., West Virginia v. EPA*, 597 U.S. 697, 719-20 (2022) (rejecting the government's mootness argument despite its representations that it had "no intention of enforcing the Clean Power Plan prior to promulgating a new Section 111(d) rule.").

Nor do any of the government's equitable arguments in the present appeal evince that it would be harmed by this Court's denying the motion. *See* Gov. Br. at 50-55. Indeed, the government's own delay enforcing the CTA and exempting domestic entities and U.S. persons is far more damaging to its purported interests than this Court's requiring it to proceed at this stage. *See* Pl. Supp. Authority Letter, at 2, ECF. No. 40.

**3. The Interim Final Rule has no effect on this appeal.**

The government correctly observed (at 2) that the IFR does not moot this appeal. The only relevant question, then, is whether the district court erred when it denied Plaintiffs preliminary injunction motion. Indeed, this was *the government's*

*own position* until that position was no longer convenient.[2] The government does not explain its surprising about-face. Nor does the government identify any reason, aside from eventual mootness, that holding this case in abeyance would simplify the question of whether the district court erred.

The IFR thus has little bearing on Plaintiffs' merits or equities claims. This Court "must view any strategic moves designed to keep" it "from reviewing challenged conduct with a 'critical eye'." *Health Freedom Def. Fund, Inc. v. Carvalho*, 104 F.4th 715, 723 (9th Cir. 2024) (holding that repeated changes in government policy do not moot a challenge to those policies) (quoting *Knox v. Serv. Emps. Int'l Union,* 567 U.S. 298, 307 (2012)). This is especially true where, as here, the government cannot commit itself to consistent litigating positions or decide whether it should enforce the CTA domestically. This Court need not delay its review when the purported reason for it arises from facts largely tangential to this appeal.

Indeed, the government's stated purpose in seeking a stay is its hope that "the Final Rule may well reaffirm plaintiffs' exemption from the CTA's reporting requirements, thereby mooting their claims." Gov. Mot. at 2. In other words, the government hopes that it can run out the clock and strategically avoid review.

---

[2] The government asserted in its January 14 response brief that "the question on appeal is whether the district court permissibly denied the preliminary injunction motion based on the record before it at the time." (Gov. Br. at 19).

There's another term for this tactic—"voluntary cessation." *See FBI v. Fikre*, 601 U.S. 234, 241 (2024). Of course, voluntary cessation is an exception to mootness *itself*, and even then "a defendant's voluntary cessation of a challenged practice will moot a case only if the defendant can show that the practice cannot reasonably be expected to recur." *Id.* (cleaned up). This "formidable burden" exists for a simple reason: "Were the rule more forgiving, a defendant might suspend its challenged conduct after being sued, win dismissal, and later pick up where it left off; it might even repeat this cycle as necessary until it achieves all of its allegedly unlawful ends." *Id.* (cleaned up). "A live case or controversy cannot be so easily disguised, and a federal court's constitutional authority cannot be so readily manipulated." *Id.*

If cases that have actually become moot through voluntary cessation nevertheless remain viable because of such concerns over manipulation, then *a fortiori* the government's current hope that "this case may become moot" (at 2), cannot allow it to avoid this case. This Court's "constitutional authority" should not be "so readily manipulated." *See Fikre*, 601 U.S. at 241.

### 4. A stay may complicate this Court's eventual resolution of Plaintiffs' claims.

Finally, staying the proceedings may complicate this case's resolution and force Plaintiffs to seek emergency relief later in the year. The IFR is explicitly temporary. If the government decides to enforce the CTA against Plaintiffs, this Court will almost certainly face expedited briefing and emergency litigation in the

face of the CTA's January 1, 2026, deadline.³ This is because the final rule will not be out until later this year, and, as it stands today, Plaintiffs are a mere eight months from potentially being forced to comply with the CTA.

Holding this case in abeyance would inject even more uncertainty and likely needlessly duplicate expedited litigation similar to that which occurred across the country prior to the CTA's 2025 deadline—an unnecessary waste of both the parties' and this Court's resources. *See Gov't Emples. Ins. Co. v Dizol,* 133 F.3d 1220 (9th Cir. 1998) (observing the importance of "judicial economy"). It may well take this Court a substantial time to resolve the present appeal given the numerous constitutional claims, the weight of the interests involved, and the case's complexity. Rather than potentially being forced to address these issues on an expedited timeline, this Court should simply deny the government's unnecessary request for delay and resolve this case as currently presented.

---

³ FinCEN may not permissibly delay the CTA's enforcement past January 1, 2026. *See* 31 U.S.C. § 5336(b)(1)(B).

## CONCLUSION

Plaintiffs request that this Court deny the government's motion to hold this case in abeyance.

Dated: April 23, 2025.

Respectfully,

/S/   Christian Clase
CHRISTIAN CLASE
CALEB KRUCKENBERG
Center for Individual Rights
1100 Connecticut Ave NW, Suite 625
Washington, D.C. 20036
Clase@CIR-USA.org | 765-543-6606

THOMAS R. RASK, III
JULIE PARISH
Kell, Alternman & Runstein, L.L.P
520 SW Yamhill Street, Suite 600
Portland, Oregon 97204

## CERTIFICATE OF COMPLIANCE

I certify that this responsive motion complies with the type-volume limits of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 1,757 words. It also complies with the typeface and style requirements of Rule 27(d)(1)(E) and Rule 32(a)(5)-(6) because it was prepared using 14-point Times New Roman, a proportionally spaced typeface.

/s/ Christian Clase
CHRISTIAN CLASE
